829 F.2d 1125
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ALLSTATE INSURANCE COMPANY, Plaintiff-Appellant,
v.
Randy GUDENEAU, Marion Marx, individually, and as next
friend of Melinda Adams, a minor (86-1844), John
Hartunian & Michael Powell (86-2000),
Defendants-Appellees.
 Nos. 86-1844, 86-2000
 United States Court of Appeals, Sixth Circuit.
 September 22, 1987.
 
 Before NATHANIEL R. JONES, WELLFORD and RALPH B. GUY, Jr., Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Allstate Insurance Company appeals from two district court orders dismissing, for lack of jurisdiction, its actions seeking declaratory relief. For the reasons set forth below, we reverse both district court orders and remand for further proceedings.
 
 I.
 No. 86-1844
 
 2
 This case arose out of an incident that occurred on July 17, 1983. On that evening Randy Gudeneau, then age 14, and David Francis were working on two mopeds in the Gudeneau family garage when Robert Gudeneau, Randy's older brother, arrived home from work at 11:30 p.m. At that time, the three decided to drive to a gas station to get gas for the mopeds. Robert drove his car, a convertible, while Francis rode in the passenger seat and Randy rode in the back. They rode with the top down. On the way to the gas station, the boys stopped to talk to a party of four pedestrians, two were boys known to the Gudeneaus and the other two were girls, Melinda Adams and Bridget White. Thereafter, the boys proceeded to the gas station where they bought gas for the moped and Randy bought a Pepsi in a glass bottle. On their way home, Randy tossed or threw the bottle from the car as they passed the four individuals they had talked to earlier. The bottle struck White and Adams, injuring Adams' hand.
 
 
 3
 At the time of this incident, Randy lived with his parents. The parents were the named insureds on a homeowners policy with Allstate. Following the incident, Melinda Adams filed a tort complaint in Macomb County Circuit Court on January 5, 1984, alleging that Randy had thrown a bottle out of a moving vehicle and the bottle had struck and injured her. The Gudeneaus tendered the defense of the tort complaint to Allstate and demanded coverage under the family liability provisions of the policy. Allstate subsequently sent the Gudeneaus a reservation of rights letter in which it informed them that the policy did not cover their potential liability because of the following exclusion contained in the policy:
 
 Exclusions--Losses We Do Not Cover
 
 4
 1. We do not cover any bodily injury which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.
 
 
 5
 Despite its belief that the policy was not applicable, Allstate did accept the defense of the tort suit under a reservation of rights, pending a judicial determination of the coverage issue. In order to secure this judicial determination, Allstate commenced a declaratory action in federal district court seeking a declaration that it had neither the duty to defend Randy nor the duty to indemnify him for any liability that might attach in the tort suit. In the meantime, the underlying state tort suit continued to proceed with defense counsel retained by Allstate on behalf of the Gudeneaus.
 
 
 6
 In the federal suit, Allstate named as defendants all parties who might have an interest in the outcome of the coverage issue, including the insured (Gudeneau) and the tort plaintiff (Marion Marx, individually and as next friend of Melinda Adams). On May 16, 1986, Allstate filed a motion for summary judgment alleging that no genuine issue of material fact existed and that it was entitled to a judgment as a matter of law. On May 27, 1986, defendant Marx filed a cross-motion for summary judgment. Both parties agreed that Gudeneau had intentionally thrown the bottle out of the car and that it had injured Melinda Adams.
 
 
 7
 The district court ruled on the motions in an order entered on August 14, 1986. The court denied both motions after finding that a narrow factual issue remained to be resolved. The court held that if Randy had thrown the bottle out of the car with the intent to frighten the group containing Melinda Adams, then there would be no coverage. However, if he had thrown the bottle merely as an act of litter, then there would be coverage. The court concluded that a trial would be necessary in order to resolve this issue.
 
 
 8
 The trial commenced on August 18, 1986. On August 19, 1986, following a hearing, the court determined, on the record, that since the case involved Michigan law and since judicial economy would not be served by retaining jurisdiction, it would dismiss the action for lack of jurisdiction. The court based its holding on American Home Assurance Co. v. Evans, 791 F.2d 61 (6th Cir. 1986), and Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Insurance Co., 791 F.2d 460 (6th Cir. 1986).
 
 No. 86-2000
 
 9
 This declaratory action arose as a result of claims made against Allstate's insured concerning an alleged assault and battery committed against Michael Powell on October 5, 1983 by John Hartunian. In a tort complaint filed in Wayne County Circuit Court on October 4, 1985, Powell alleged that during an argument Hartunian caused him to fall off a porch by opening a screen door and thereafter proceeded to assault and batter him.
 
 
 10
 At the time of this incident, Hartunian lived with his parents who were the named insureds on homeowners policy with Allstate. The defense of the tort complaint was tendered to Allstate and coverage was demanded under the family liability provisions of the policy. It was Allstate's position, communicated to the Hartunians in a reservation of rights letter, that the policy did not cover the potential liability because of the following exclusion contained in the insurance contract:
 
 Exclusions--Losses We Do Not Cover
 
 11
 1. We do not cover any bodily injury which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.
 
 
 12
 However, Allstate did accept the defense of the state tort action under a reservation of rights, pending a judicial determination of the coverage issue. In order to secure this judicial determination, Allstate commenced this declaratory action seeking a declaration that it neither had the duty to defend Hartunian nor the duty to indemnify him for any liability that might attach. The underlying state tort action is presently pending in state court.
 
 
 13
 In the federal action, Allstate named as defendants all parties who might have an interest in the outcome of the coverage issue, including the insureds (Hartunian) and the tort plaintiff (Powell).
 
 
 14
 On June 13, 1986, Allstate filed a motion for summary judgment. It was Allstate's position that, based on the undisputed facts, and as a matter of law, the allegations directed against Hartunian fell within the above quoted policy exclusion. Rather than entertaining the motion, the district court entered an order on June 19, 1986, staying proceedings pending this court's issuance of a mandate in Manley, Bennett. It thereafter dismissed the complaint on October 7, 1986, noting that it was bound by this court's decision in Manley, Bennett. These cases have been consolidated on appeal.
 
 II.
 
 15
 Both district courts relied on recent Sixth Circuit cases to reach their decisions. The courts apparently interpreted American Home Assurance Co. v. Evans, 791 F.2d 61 (6th Cir. 1986) and Manley, Bennett McDonald Co. v. St. Paul Fire & Marine Insurance Co., 791 F.2d 460 (6th Cir. 1986) as setting forth a per se rule that declaratory relief is inappropriate in insurance coverage cases. Allstate contends these cases should be construed narrowly and limited to their facts.
 
 
 16
 In American Home, the plaintiff-insurer filed a 28 U.S.C. Sec. 2201 (1982) declaratory action shortly before the commencement of a trial in state court. The state court trial had been adjourned for eight months due to substitution of counsel. The insured, an attorney, had been sued for malpractice and dishonest conduct regarding a client's affairs. The insurer sought a declaration that the attorney's conduct fell within the policy's 'dishonesty' exclusion. The initial complaint was filed in state court in July 1981, and the federal action was filed in October 1982. At the time of the federal filing, the insurer simultaneously petitioned the state court to have the malpractice action stayed pending a determination of the federal coverage action. The state court denied the motion, and the state suit proceeded to judgment in favor of the plaintiff prior to the district court's consideration of the declaratory action.
 
 
 17
 After due consideration, the district judge granted declaratory relief. On appeal this court reversed and ordered dismissal because 'we saw the case as an effort to play off the state and federal courts against each other and as a race for res judicata.' American Home, 791 F.2d at 63. The court further held that '[w]here complex factual issues are present and the action parallels a state court action arising from the same facts and where alternative remedies are available, declaratory judgment is inappropriate.' Id. at 64.
 
 
 18
 Manley, Bennett involved a Sec. 2201 action filed by a stock brokerage firm against the issuer of its fidelity bonds. Initially, the firm sought a declaration as to both coverage and indemnification in two state court cases alleging various counts of fraud and securities violations. The district court ruled in favor of Manley, Bennett on the indemnification issue and also granted the firm's motion to voluntarily dismiss the coverage issue. The insurer appealed to this court. This court ruled that the declaratory judgment was improvidently granted and ordered dismissal. In so holding, the court considered two factors that weighed against the exercise of federal jurisdiction. The first was the fact that the coverage question would not be resolved in federal court. The second was the existence of a 'superior alternative remedy' in the form of an action for indemnity after conclusion of the state trial. Manley, Bennett, 791 F.2d at 462. The court stressed, as it previously had in American Home, that 'declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court. Such actions . . . should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem.' Id. at 463.
 
 
 19
 Several district courts in this circuit have also concluded that these two cases mandate the dismissal of virtually all insurance coverage declaratory judgment actions brought before them. In the recent case of Allstate Insurance Co. v. Green, No. 86-1729, slip op. (6th Cir. Aug. 6, 1987), this court addressed the question of whether this was an accurate interpretation of the holdings in those two cases.
 
 
 20
 Green involved a declaratory action that arose as a result of a claim made against Allstate's insured concerning an assault and battery committed by Frank Middlebrooks, the son of Allstate's insureds. Green filed a tort complaint in state court against the Middlebrooks alleging negligence. The Middlebrooks tendered the defense of the tort complaint to Allstate and demanded coverage under the family liability provisions of the policy. Allstate informed the Middlebrooks that it did not believe that its policy covered their potential liability due to the following exclusion:
 
 Exclusions--Losses We Do Not Cover
 
 21
 1. We do not cover any bodily injury which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.
 
 
 22
 Allstate nonetheless accepted the defense of the tort suit under a reservation of rights, pending a judicial determination of the coverage issue. In an effort to secure such a judicial determination, Allstate commenced a declaratory action pursuant to Sec. 2201, seeking a declaration that it had neither the duty to defend the Middlebrooks nor the duty to indemnify them for any liability that might arise in the tort action. Allstate named as defendants all parties who might have an interest in the outcome of the coverage issue, including the insureds and the tort plaintiffs.
 
 
 23
 Allstate subsequently filed a motion for summary judgment. However, prior to hearing argument on the motion, the district court sua sponte dismissed the claim for lack of jurisdiction. The district court felt that this court's decisions in American Home and Manley, Bennett dictated such a result.
 
 
 24
 On appeal this court framed the relevant inquiry as follows: 'we must address the issue of whether a per se rule as to declaratory judgment actions relative to insurance coverage was intended by American Home and Manley, Bennett.' Green, slip op. at 9. Prior to answering this question, the court reviewed the scope and applicability of Sec. 2201 actions. The court specifically cited the case of Grand Trunk Western Railroad Co. v. Consolidated Rail Corp., 746 F.2d 323 (6th Cir. 1984) where the court dealt with a declaratory judgment action filed by a plaintiff in federal court following a dismissal on the same issue by a state court. In Grand Trunk, the court adopted the following general considerations governing the grant of declaratory judgment:
 
 
 25
 (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and
 
 
 26
 (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.
 
 
 27
 Id. at 326. The court then set forth five factors to be considered in determining whether declaratory relief should be granted: (1) whether the declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. Id.
 
 
 28
 The Green court noted that the district court failed to apply this legal framework to the case before it and instead applied a per se rule of no declaratory relief in insurance coverage cases. The court found this to be error. The court noted that in the past it had granted declaratory relief in insurance coverage cases. See American States Insurance Co v. D'Atri, 375 F.2d 761 (6th Cir. 1967). The court then held that
 
 
 29
 [r]eview of . . . Supreme Court and Sixth Circuit precedents, combined with the general considerations and factors set forth in Grand Trunk, indicate that our decisions in American Home and Manley, Bennett were not intended to preclude totally the availability of Sec. 2201 actions involving insurance coverage questions. In fact, we have since upheld the grant of declaratory relief to an insurer, specifically pointing out that analysis under the factors first enunciated in Grand Trunk supported the exercise of federal jurisdiction.
 
 
 30
 Green, slip op. at 12. The case referred to by the Green court is State Farm Fire & Casualty Co. v. Odom, 799 .2d 247 (6th Cir. 1986).
 
 
 31
 The Green court concluded that the district court had misperceived the reach of American Home and Manley, Bennett. The court therefore reversed and remanded the case to the district court to permit it to 'assess the propriety of the action pursuant to the general considerations, as well as the five-factor test, we set forth in Grand Trunk.' Green, slip op. at 13.
 
 
 32
 The district courts in the instant appeals, as the district court in Green, felt compelled to read American Home and Manley, Bennett as setting forth a per se rule of no declaratory relief in insurance coverage cases. Given the holding in Green, and this court's decision in Odom, this was an incorrect reading of those two cases. Clearly, courts must apply the Grand Trunk analysis prior to reaching a decision on whether to grant declaratory relief. Neither district court did this in the instant cases. Green therefore mandates that both cases be reversed and remanded to the district courts with instructions that the courts assess the propriety of granting declaratory relief pursuant to the considerations and five factor test set out in Grand Trunk.
 
 
 33
 Accordingly, the judgments of the district courts are REVERSED and these cases are REMANDED to the district courts for further proceedings consistent with this opinion.